(No. 37606.—

JOHN BENJAMIN ROE, Appellant, *vs.* JANE G. ROE *et al.,* Appellees.

*Opinion filed May 27, 1963.*

CANFIELD, CANFIELD, FRANKS & LINDROTH, of Rockford, (ROBERT R. CANFIELD and HERBERT H. FRANKS, of counsel,) for appellant.

EATON & LEEMON, of Mount Carroll, for appellee JANE G. ROE.

MR. JUSTICE HERSHEY delivered the opinion of the court:

This is an action filed by John Benjamin Roe, the plaintiff-appellant here, against his former wife, Jane G. Roe, to set aside two deeds, and to recover the possession of a 180-acre farm in Ogle County, Illinois. The plaintiff contended in his amended complaint that the two deeds executed by him to the farm in question should be declared invalid because (1) at the time the deeds were executed he was suffering from a mental illness, and he was unable to transact any ordinary business or make any decisions pertaining to the execution of these deeds and therefore the same are a nullity; and (2) title to the property purported to be transferred by those deeds was by prior agreement to be returned to him in the event of his recovery which he alleged occurred in 1954.

At the close of the plaintiff's proof the defendant made a motion for a finding in her favor and a judgment dismissing the action against her. The motion was allowed and an order was entered dismissing the action.

The record discloses that the plaintiff was married to the defendant in 1934, and that he then owned the farm in question, the same having been conveyed to him by his mother in 1927. About three months after the marriage the plaintiff was admitted as a voluntary patient to the Sacred Heart Sanitarium in Milwaukee, Wisconsin, suffering from moderately severe depressions which lasted until the following March. After this time, in the years 1944 and 1950, the plaintiff was a voluntary inmate in the Elgin State Hospital for a few months. It was in June, 1950, just prior to his becoming a voluntary patient at Elgin, that a trust deed to the farm in question and the parties' residence in North Carolina was executed by the plaintiff. In it this property was conveyed to his father-in-law, Charles Gilbert, as trustee, and to a mutual friend and attorney of his wife, a Mr. Fearer, as successor trustee. The terms of the trust upon which the trustee held title were not mentioned in the trust deed or any other writing admitted into evidence. The plaintiff was able to describe all the details of this transaction, including his conversation with his wife and the others concerned including the terms of an alleged oral agreement to return the property to him if he recovered. Later, by deed acknowledged in February of 1951, the trustees conveyed both properties back to the plaintiff and the defendant, which deed was recorded in North Carolina but not in Illinois. The plaintiff claimed that he was unaware of this deed until this cause came on for depositions and trial. Both parties took the position in their briefs that this deed nullified the conveyance of June 7, 1950, to the trustee, and that the relief sought here to set it aside is not necessary.

In September of 1951 the plaintiff again entered a sanitarium at Asheville, North Carolina, as a voluntary patient. Just prior to going there his wife requested that he convey the Illinois farm to her in order that she might more easily manage the same. After some refusal he finally did on

September 19, 1951, execute a quitclaim deed conveying all his interest to the farm to his wife. This is the deed that the plaintiff now seeks to have set aside. Again the plaintiff testified fully as to the nature of this transaction and disclosed that he fully understood it. In August of 1952, while the plaintiff was working and residing in Georgia, the plaintiff and defendant sold the Hendersonville, North Carolina, residence property. The consideration therefor was divided between them. The record also discloses that about the same time the plaintiff and defendant made a division of the personal property on the farm and other personal property and also of the cash belonging to the parties.

In December of 1953 the defendant obtained a divorce from the plaintiff in Illinois. The divorce decree purports not only to sever the bonds of matrimony between the parties, but also to settle all property rights of the parties, and the visitation right of the plaintiff with his children. Before the divorce was granted, the plaintiff here filed an answer denying certain of the allegations set forth in the complaint for divorce but admitting others, including the allegation that a property settlement had been made. In addition there was also filed by the plaintiff an entry of appearance, which purported to give an attorney the right to enter and file the appearance of the plaintiff. A blank was left in the entry of appearance for the insertion of the name of an attorney. The plaintiff contends here that there was never any property settlement made between his wife and himself pursuant to the divorce proceeding or otherwise. However, the entry of appearance does have in it a statement as follows: "in property settlement ample provision was made," for the support of the children, which statement was in the handwriting of the defendant. In our opinion this evidence does indicate that a property settlement was made as set forth in the divorce decree and is further evidence that the plaintiff, contrary to his claim

at the trial of this case, had knowledge of this property settlement. Furthermore, the record in the divorce proceeding reveals that Jane Roe testified that a property settlement had been made, that the farm had been deeded to her and that for this reason she was waiving any right to alimony or money for child support. Following the entry of this decree the plaintiff, who previously had been sending money to his wife regularly, did not contribute to her support and made only minor contributions to the support of one child, indicating that the plaintiff was aware of the terms of the decree, and that his wife was to use the income from the farm to support herself and the children.

The plaintiff here would have the court hold void that portion of the decree that refers to the settlement of the property rights of the parties, but all the other provisions to be valid, which apparently was the opinion of the plaintiff as shown by his subsequent remarriage in 1957. Where a decree appears to be complete and valid on its face this cannot be done collaterally without some previous hearing before the court that entered the divorce decree. Here the record does not disclose any action by the plaintiff in the divorce proceeding to delete the provision from the decree. In such a situation the plaintiff's contention here would amount to a collateral attack on the decree. (*Evans* v. *Clement,* 14 Ill. 206; *Collins* v. *Collins,* 14 Ill.2d 178; *Cullen* v. *Stevens,* 389 Ill. 35.) Nor did the plaintiff ever file any proceeding pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1961, chap. 110, par. 72,) nor is any reference made thereto. Section 72 provides that any void order, judgment or decree may be vacated upon a proper petition being filed pursuant to said section and evidence heard thereunder. Nothing of that kind appears here and therefore the purported settlement of the property rights of the parties in this decree including the provision that each is barred from all right in the property of the other, would appear to be binding upon the parties.

The plaintiff contends, however, that he was mentally incompetent at the time the deeds in question were executed, that this incompetency persisted throughout the divorce proceeding and that the validity of these deeds was not adjudicated in that proceeding. Throughout the proceeding here the plaintiff appeared as a witness. He described in detail all the transactions, seemed to and did understand the nature and effect of the deeds, all of which is corroborated in the testimony of the two doctors, Werner Teuteur and Robert L. Craig, as set forth in their depositions filed in this cause. These doctors, who were the treating physicians at the Elgin State Hospital and the Asheville, North Carolina, sanitarium where the plaintiff was a voluntary inmate, described him as an emotionally depressed person who was not insane and not psychotic, but who at all times possessed the mental capacity to transact ordinary business. From 1950 to 1953 the plaintiff was employed in responsible positions with the firm of Dun & Bradstreet and the Lockheed Aircraft Corporation at Atlanta, Georgia, where he had charge of training supervisory personnel. At the time of the entry of the divorce decree in December of 1953 the plaintiff as not an inmate of any sanitarium, but was successfully employed at a substantial salary at the Humanics Corporation of Kansas City, Missouri. In our opinion the trial court did have sufficient evidence in the record to conclude that the mentality of the plaintiff was sufficient for him to execute the deeds in question.

The plaintiff finally contends that even if the deeds in question were in fact valid the property conveyed thereby was, by agreement entered into at the time of their excution, to have been held in trust and reconveyed to the plaintiff upon his recovery, which he admits was at least by June, 1954. The plaintiff also claims that after the divorce in 1953 he examined the records in the Ogle County recorder's office at least once a year and that the present

suit was began by him a year after he learned of a deed executed on ·February 16, 1959, by the successor trustee named in the trust deed of June 7, 1950, purporting to convey the farm to his wife, and of a mortgage executed by her shortly thereafter. (Apparently this deed was considered necessary in order to obtain a mortgage loan since the trustee's deed of February 19, 1951 reconveying the property to the plaintiff and defendant was not recorded in Illinois.) The evidence discloses, however, that the quit-claim deed executed by the plaintiff in September of 1951 conveying absolutely all his interest in the farm to the defendant was also recorded in Illinois in 1951 and was known to the plaintiff at the time of his alleged recovery in 1954. Although the plaintiff testified as to an oral understanding that his wife would reconvey the farm upon his recovery, the deed itself executed following this conversation was without reservation and conveyed absolutely all his interest in the farm to the defendant. During the subsequent divorce proceeding the plaintiff himself asserted in his entry of appearance that the parties' property rights had been settled and he did not then claim that he was entitled to any interest in the farm pursuant to any oral agreement with his wife. The defendant testified as an adverse witness under section 60 of the Civil Practice Act that the plaintiff during his visits to Illinois frequently discussed the fact that she had the farm and it is undisputed that the plaintiff knew of the defendant's possession of the farm and the use of the income from the same to support her and their two children. Yet at no time from the date of his admitted recovery from the alleged mental illness until the commencement of this suit in September of 1961 does it appear that the plaintiff ever took any steps to have the property reconveyed to him in accordance with the alleged original understanding as hereinabove set forth. In our opinion this evidence establishes that the plaintiff by his failure to bring this suit within a reasonable time after

his alleged recovery in 1954, by his acquiescence in the use for several years of the income from said farm by his wife, who supported herself and their two children from same, and who, in reliance upon her ownership of the farm, became indebted in the amount of $16,000 pledging the farm as security for such a loan is guilty of *laches* and has, in effect, ratified his original deed executed in 1951 and is now estopped from asserting that anything besides an absolute conveyance to his wife was intended. See, *Brandt* v. *Phipps*, 398 Ill. 296.

For the foregoing reasons the decree of the circuit court of Ogle County is affirmed.

*Decree affirmed.*