**2025 IL 130596**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130596, 130597 cons.)

*In re* MARRIAGE OF ELSA M. TRONSRUE, Appellee, and
GEORGE M. TRONSRUE III, Appellant.

*Opinion filed May 22, 2025.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1     The petitioner, Elsa M. Tronsrue, filed a petition for dissolution of marriage from her husband, George M. Tronsrue III, and George filed a counterpetition. In 1992, the Du Page County circuit court entered a judgment for dissolution of marriage incorporating a marital settlement agreement that obligated George to pay Elsa one-half of the marital portion of his federal veterans' disability payments as a property distribution. In 2019, George filed a petition to terminate the veterans'

disability payments, maintaining that the division of his benefits was void under federal law. Elsa moved to dismiss George's petition. The circuit court granted Elsa's motion to dismiss George's petition to terminate his veterans' disability payments, found George in contempt for failing to make the payments, and ordered him to pay Elsa's attorney fees.

¶ 2 The appellate court, with one justice dissenting, affirmed the judgment of the circuit court, finding that, because the circuit court had personal and subject-matter jurisdiction over the judgment of dissolution of marriage, the marital settlement agreement dividing George's veterans' disability benefits was not void even if it violates federal law. 2024 IL App (3d) 220125, ¶¶ 10-23 (*Tronsrue I*). Justice Albrecht dissented, reasoning that, although the circuit court had jurisdiction over the matter, pursuant to the supremacy clause, federal law preempts the marital settlement agreement provision in the judgment of dissolution of marriage where the parties agreed that George would pay Elsa a percentage of his veterans' disability benefits. Therefore, the judgment is void and unenforceable. *Id.* ¶¶ 25-32 (Albrecht, J., dissenting).

¶ 3 In a related order, the appellate court also affirmed the circuit court's contempt finding, reasoning that George was required to make the payments because the judgment was not void. 2024 IL App (3d) 220294-U, ¶¶ 13 (*Tronsrue II*). Justice Albrecht dissented from the contempt decision as well, reasoning that, because a provision in the judgment of dissolution of marriage was void with respect to the division of George's benefits, George had a compelling justification for refusing to comply. *Id.* ¶¶ 18-20 (Albrecht, J., dissenting).

¶ 4 We allowed George's petitions for leave to appeal from both cases and consolidated them pursuant to Illinois Supreme Court Rule 315 (eff. Dec. 7, 2023). For the following reasons, we affirm the judgments of the appellate court.

¶ 5 I. BACKGROUND

¶ 6 A. Circuit Court Proceedings

¶ 7 On May 7, 1990, the petitioner, Elsa Tronsrue, filed a petition for dissolution of marriage from her husband, George Tronsrue. George filed a counterpetition. On

July 6, 1992, the circuit court entered a judgment of dissolution of marriage, incorporating a marital settlement agreement with a provision that obligated George to pay to Elsa one-half the marital portion of his federal military disability payments as a property distribution. Specifically, the agreement provided, in relevant part, the following:

"ARMY \ VETERANS' ADMINISTRATION DISABILITY RETIREMENT PAY—The Parties agree that based upon the Court's ruling[1] that 37.2% of Husband's Army Disability Retirement pay and V.A. disability pension is marital that Wife shall receive an amount equal to 18.6% of Husband's Army Disability Retirement pay and 18.6% of Husband's V.A. disability pension payable to Wife pursuant to the applicable sections of the Uniformed Services Former Spouses Protection Act. If for any reason the United States Army and the V.A. will not withhold the appropriate amounts and send them directly to Wife then Husband shall pay directly to Wife 18.6% of his Army Disability Retirement pay and 18.6% of his V.A. Disability Pension each and every month upon entry of Judgment For Dissolution for as long as he receives said pay.[2]

The Husband specifically agrees that for purposes of the calculation of child support benefits, his share of the Army / Veterans' Administration Disability Retired Pay is includable as part of his net income against which to apply the Illinois Statutory child support guidelines."

¶ 8    On September 12, 2019, Elsa filed a petition for indirect civil contempt. In so doing, she alleged that she believed that George's federal Army disability and Veterans Affairs (V.A.) disability pay had increased. However, her payments had not. Specifically, she maintained that George continued to pay her the same $303

---

[1]We note, and subsequently discuss, that courts do not have the authority to award military benefits as marital property. However, a veteran may voluntarily agree to share his benefits after he has received them.

[2]We recognize that the language in the marital settlement agreement contemplates the Army and V.A. sending the payments to the wife and places the responsibility on the husband to send the payments directly to the wife where the Army and V.A. fail to do so. However, as discussed later in the opinion, the veteran must receive the benefits first.

each month that he had paid her at the time the judgment of dissolution of marriage was entered.

¶ 9  On November 26, 2019, George filed an amended petition to terminate his veterans' disability payments to Elsa, maintaining that the provision dividing his benefits was void under federal law. Specifically, George asserted that the circuit court did not have subject-matter jurisdiction to order the division of his veterans' disability benefits as an asset under federal law. Because the circuit court did not have jurisdiction to divide his veterans' disability benefits and treat the benefits as assets at the time of the judgment of dissolution, George maintains that the benefits should never have been divided. Therefore, he requested that the payments to Elsa be terminated immediately.

¶ 10  On December 19, 2019, Elsa moved to dismiss George's petition. On January 6, 2020, the circuit court granted Elsa's motion to dismiss George's petition to terminate the payments. On August 14, 2020, the circuit court entered an order denying George's motion to dismiss Elsa's petition for adjudication of indirect civil contempt. On November 2, 2020, the circuit court found George in indirect civil contempt for failing to make the veterans' disability payments. In so doing, the circuit court reasoned that Elsa established a *prima facie* case that George had not complied with the terms of the judgment of dissolution and George did not establish that his failure to abide by the court order was with compelling cause or justification. George asserted that the compelling cause or justification for failing to make the payments was that the circuit court did not have subject-matter jurisdiction over the preempted asset—George's veterans' disability payments. In other words, the marital settlement agreement ordering George to make veterans' disability payments to Elsa was void, and the circuit court had no subject-matter jurisdiction to enforce a void order.

¶ 11  The circuit court found that it had subject-matter jurisdiction over the dissolution proceedings and has subject-matter jurisdiction over "any subsequent actions necessary for enforcement of the Court's orders." It further found that, although it would not have jurisdiction to order the division of federal disability benefits, it does have jurisdiction to enforce a binding agreement of the parties. The court reasoned that there was a settlement agreement in place and it must ascertain whether the parties are living up to the terms of their agreement. It concluded that

George was in indirect civil contempt of court for failing to comply with the judgment to which he agreed and that he had not set forth a compelling cause or justification for failing to comply with the judgment of dissolution. The circuit court also ordered George, as a partial purge, to provide within 45 days documentation showing all amounts received from "V.A. disability retirement and pension" since July 6, 1992.

¶ 12 In compliance with the partial purge provision of the contempt order, lengthy discovery ensued to ascertain how much Elsa was owed due to cost-of-living adjustments based on the payments George had received since July 6, 1992. However, Elsa was not satisfied that George had provided clear evidence of the dollar amount he was receiving in disability benefits.

¶ 13 After a hearing on June 23, 2021, the circuit court issued an order requiring George to provide "ALL BANK STATEMENTS OR OTHER STATEMENTS FOR THE CALENDAR YEAR 2019 WHICH EVIDENCE PROOF OF ALL AMOUNTS RECEIVED BY HIM FROM THE V.A. DISABILITY RETIREMENT AND PENSION SYSTEM." Compliance with this order would satisfy the partial purge provision in the November 2, 2020, contempt order. At a hearing on January 24, 2022, Elsa's counsel conceded that George provided the necessary documents to satisfy the partial purge provision. At this point, all that remained was resolving the issue of the amount owed to Elsa.

¶ 14 On March 4, 2022, counsel for Elsa argued that George was $32,980.86 in arrears through September 12, 2020, and moved for 5% interest on each missed payment. That same day, George's counsel argued that the parties are bound by what they agreed to and that neither party agreed to charge interest on any unpaid amounts. Therefore, according to George's counsel, the parties should be bound by the simple purge amount—the $32,980.86 that George had not paid up to that time. At the conclusion of the hearing on March 4, 2022, the circuit court entered an order requiring George to pay Elsa $32,980.60[3] and denying Elsa's motion for interest. The circuit court also granted Elsa leave to file a petition for attorney fees.

---

[3]The parties do not contest that the circuit court entered an order awarding Elsa $32,980.60 as opposed to $32,980.86.

¶ 15      On March 31, 2022, George filed a notice of appeal from the January 6, 2020, order granting Elsa's motion to dismiss George's petition to terminate the payments made pursuant to the 1992 judgment of dissolution of marriage; the August 14, 2020, order denying George's motion to dismiss Elsa's petition for adjudication of indirect civil contempt; the November 2, 2020, order finding George to be in indirect civil contempt of court; and the March 4, 2022, order setting the purge amount. This appeal was docketed by the appellate court as number 3-22-0125 (*Tronsrue I,* 2024 IL App (3d) 220125).

¶ 16      On April 1, 2022, Elsa filed a petition for attorney fees related to the contempt finding pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/508(b) (West 2018)). On June 22, 2022, the circuit court ordered George to pay $24,939 in attorney fees. On July 20, 2022, George filed a second notice of appeal from the order awarding Elsa attorney fees, which included a reference to all previous orders in his first notice of appeal. This appeal was docketed by the appellate court as number 3-22-0294 (*Tronsrue II*, 2024 IL App (3d) 220294-U).

¶ 17                               B. Appellate Court Proceedings

¶ 18                                     1. *Tronsrue I*

¶ 19      On appeal, George argued that the circuit court erred when it enforced a provision in the marital settlement agreement that purported to divide George's Army and V.A. disability benefits because the circuit court lacked subject-matter jurisdiction to do so at the time of the parties' 1992 divorce, rendering that provision in the agreement void.

¶ 20      The appellate court affirmed the judgment of the circuit court, finding that, because the circuit court had both personal and subject-matter jurisdiction over the judgment of dissolution of marriage, the agreement dividing George's benefits was not void and George could not collaterally attack it, even if it violates federal law. *Tronsrue I*, 2024 IL App (3d) 220125, ¶¶ 10-23.

¶ 21      Justice Albrecht dissented. *Id.* ¶¶ 25-32 (Albrecht, J., dissenting). In so doing, she reasoned that, although the circuit court had jurisdiction over the matter,

pursuant to the supremacy clause (U.S. Const., art. VI), federal law preempts the marital settlement agreement provision in the judgment of dissolution of marriage where the parties agreed that George would pay veterans' disability benefits. *Tronsrue I*, 2024 IL App (3d) 220125, ¶ 26. Put simply, Justice Albrecht reasoned that the division of the disability benefits violated the anti-assignment provisions in section 5301 of the Veterans Benefits Act of 2003 (Act) (38 U.S.C. § 5301 (2018)). *Tronsrue I*, 2024 IL App (3d) 220125, ¶ 26. Therefore, the marital settlement agreement provision in the judgment of dissolution is void and unenforceable. *Id.* ¶¶ 25-32.

¶ 22                                2. *Tronsrue II*

¶ 23       In this appeal, George argued that the circuit court erred when it ordered him to pay attorney fees related to the contempt finding. *Tronsrue II*, 2024 IL App (3d) 220294-U, ¶ 1. He asserted that he had a compelling reason not to comply with the 1992 judgment of dissolution of marriage—specifically, that the provision in the judgment related to his Army disability retirement pay and his V.A. disability benefits was void. *Id.* ¶ 11.

¶ 24       The appellate court affirmed the circuit court's contempt finding and the award of attorney fees, reasoning that George was required to make the payments because the judgment of dissolution of marriage was not void. *Id.* ¶ 13. Therefore, it was not error for the circuit court to find George in contempt of court (and subsequently award attorney fees) for his intentional failure to make the disability payments to Elsa. *Id.*

¶ 25       Justice Albrecht dissented from this decision as well, reasoning that, because the veterans' disability payments provision in the judgment of dissolution of marriage was void with respect to the division of George's benefits, George had a compelling justification for refusing to comply. *Id.* ¶ 20 (Albrecht, J., dissenting). Therefore, it was error for the court to award attorney fees and costs against George. *Id.* ¶¶ 18-20.

¶ 26                                II. ANALYSIS

¶ 27        George presents two issues for this court to review: (1) whether the provision
       in the marital settlement agreement incorporated into the 1992 judgment of
       dissolution of marriage, dividing George's military disability benefits and treating
       them as marital property, is void and unenforceable because the state law
       authorizing the division is preempted by federal law and (2) whether the attorney
       fee award must be vacated if it was based on a void order.


¶ 28                             A. Standard of Review

¶ 29        Here, because this case concerns issues of statutory interpretation, federal
       preemption, and other questions of law, our review is *de novo*. *Haage v. Zavala*,
       2021 IL 125918, ¶ 41 ("Issues of statutory construction present questions of law
       that we review *de novo*."); *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 39
       (2010) ("Questions of federal preemption and statutory interpretation present
       questions of law that are subject to *de novo* review."). We review a circuit court's
       entry of an attorney fee award for an abuse of discretion. *In re Marriage of Heroy*,
       2017 IL 120205, ¶ 13 ("The circuit court's decision to award attorney fees will not
       be disturbed absent an abuse of discretion.").


¶ 30                   B. Enforcement of the Disability Payment Provision
                            of the Marital Settlement Agreement

¶ 31        George first argues that the circuit court erred in finding that the provision in
       the marital settlement agreement enforcing the distribution of his disability benefits
       to Elsa was not void, specifically because federal law prohibits the distribution of
       those benefits to anyone other than the veteran. Consequently, he argues that,
       because of federal preemption, the provision in the marital settlement agreement
       was void and the circuit court could not enforce a void order.

¶ 32        George concedes that, in 1992, the circuit court had subject-matter and personal
       jurisdiction; however, he calls for this court to "create an exception" to the general
       principle that subject-matter jurisdiction may not be relitigated except in

                                       - 8 -

circumstances like this case, specifically to "account for federal preemption in our laws on subject matter jurisdiction."

¶ 33    In a civil lawsuit not involving an administrative tribunal or administrative review, jurisdiction consists solely of subject-matter and personal jurisdiction. *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 39. Subject-matter jurisdiction refers to the power of a court to "hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). Personal jurisdiction refers to the power of a court " ' "to bring a person into its adjudicative process." ' " *People v. Castleberry*, 2015 IL 116916, ¶ 12 (quoting *In re M.W.*, 232 Ill. 2d 408, 415 (2009), quoting Black's Law Dictionary 870 (8th ed. 2004)). A void judgment is one that is entered without the court having jurisdiction (*LVNV Funding, LLC*, 2015 IL 116129, ¶ 38), while a voidable judgment is a judgment "entered erroneously by a court having jurisdiction and is not subject to collateral attack." *People v. Davis*, 156 Ill. 2d 149, 155-56 (1993). Void judgments may be challenged at any time, "either directly or collaterally, and the challenge is not subject to forfeiture or other procedural restraints." *LVNV Funding, LLC*, 2015 IL 116129, ¶ 38. In an effort to preserve the finality of judgments, only the most fundamental defect—a lack of personal jurisdiction or a lack of subject-matter jurisdiction—warrants declaring a judgment void. *Id.*; *Castleberry*, 2015 IL 116916, ¶ 15.

¶ 34    In the case under review, when the 1992 judgment of dissolution of marriage was entered, the circuit court possessed subject-matter jurisdiction because the circuit court had the power to hear and determine cases filed pursuant to the Marriage Act and divorce proceedings are justiciable matters. *In re M.W.*, 232 Ill. 2d at 424 (noting that the Illinois Constitution grants circuit courts general jurisdiction over all justiciable matters). The circuit court also had personal jurisdiction over the parties because Elsa filed a petition for dissolution of marriage in the circuit court and George consented to personal jurisdiction by filing an appearance. *Id.* at 426 (noting that "a petitioner or plaintiff submits to the jurisdiction of the court by filing a petition or complaint, 'thereby seeking to be bound to the court's resolution' " and a "respondent or defendant may consent to personal jurisdiction by his appearance" (quoting *Owens v. Snyder*, 349 Ill. App. 3d 35, 40 (2004))). Therefore, it follows that, once the circuit court obtained

jurisdiction, any judgment erroneously entered was a voidable judgment, not a void judgment. *Davis*, 156 Ill. 2d at 155-56.

¶ 35     Nevertheless, George's argument—that the 1992 judgment of dissolution of marriage was a void order because federal law preempts the state law (section 502 of the Marriage Act (750 ILCS 5/502 (West 2018))) that authorizes the circuit court to enforce a provision in the marital settlement agreement that divided veterans disability benefits—requires this court to answer the following questions: (1) Does federal law preempt enforcement of the marital settlement agreement? (2) If so, does federal preemption divest the circuit court of jurisdiction, thereby rendering the judgment of dissolution, which incorporated the marital settlement agreement, void? We answer both questions in the negative.

¶ 36     In resolving these two questions, we note that section 502(a) of the Marriage Act provides that, "[t]o promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into an agreement containing provisions for disposition of any property owned by either of them." *Id.* § 502(a). Section 502(b) also provides that the terms of the agreement incorporated into the judgment are binding on the court. See *id.* § 502(b). Finally, section 502(e) provides that the terms of the agreement set forth in the judgment are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms. See *id.* § 502(e).

¶ 37                           1. Federal Preemption

¶ 38     Article VI of the United States Constitution provides that federal law, including the constitution itself, treaties, and laws passed by Congress, is the supreme law of the land. See U.S. Const., art. VI.

¶ 39     Pursuant to the supremacy clause of the United States Constitution, in any one of the following three circumstances, a federal statute will preempt state law: " '(1) express preemption—where Congress has expressly preempted state action; (2) implied field preemption—where Congress has implemented a comprehensive regulatory scheme in an area, thus removing the entire field from the state realm; or (3) implied conflict preemption—where state action actually conflicts with federal law.' " *Performance Marketing Ass'n v. Hamer*, 2013 IL 114496, ¶ 14

(quoting *Carter*, 237 Ill. 2d at 39-40). A state law conflicts with federal law when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Electric Co.*, 496 U.S. 72, 79 (1990) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). If a state law conflicts with federal law, it is null and void. *Performance Marketing*, 2013 IL 114496, ¶ 14.

¶ 40 The federal statute that is at issue in this case is section 5301(a)(1) of the Act, which provides:

> "Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a)(1) (2018).

¶ 41 Section 5301(a)(3)(A) clarifies that, "in any case where a beneficiary entitled to compensation *** enters into an agreement with another person under which agreement such other person acquires for consideration the right to receive such benefit ***, such agreement shall be deemed to be an assignment and is prohibited." *Id.* § 5301(a)(3)(A).

¶ 42 Relying primarily on two United States Supreme Court cases, *Mansell v. Mansell*, 490 U.S. 581, 588 (1989), and *Howell v. Howell*, 581 U.S. 214, 222 (2017), George asserts that the plain language of the Act preempts any state law concerning the disposition of veterans' disability benefits in state domestic relations proceedings and prohibits states "from using 'any legal or equitable process whatever' to dispossess a veteran of these benefits."

¶ 43 However, *Mansell* and *Howell* are distinguishable from the facts in this case. *Mansell* and *Howell* hold (1) that federal law preempts the application of state community property law to military retirement pay and (2) that states cannot treat disability benefits as community property that may be divided to reimburse a divorcing spouse for a lost or diminished share of retirement pay. See *Howell*, 581 U.S. at 220; *Mansell*, 490 U.S. at 594-95.

¶ 44   Neither of these cases involved parties agreeing to an indemnification provision in a judgment of dissolution property settlement agreement. In addition, neither of these cases involved one party entering into a marital settlement agreement and agreeing to use those benefits however he wants after he has received them, including to pay his former spouse. Finally, neither *Howell* nor *Mansell* can be read as addressing the enforceability of such a provision in a marital settlement agreement.

¶ 45   *Mansell* involved a state court declining to modify a divorce decree where the parties divided disability benefits as community property. See *Mansell*, 490 U.S. at 586. In other words, *Mansell* prevents state courts from "treating military retirement pay that had been waived to receive disability benefits as community property."[4] *Id. Howell* involved a state court ordering a husband to pay his wife the original amount established in the divorce decree after waiving some of his military retirement pay for disability benefits. See *Howell*, 581 U.S. at 216. *Howell* establishes that state courts cannot order a veteran who elects to waive retirement pay for disability pay to indemnify a former spouse. *Id.* at 222. *Howell* does not bar a spouse from choosing to use his disability benefits however he wants after receiving them, including paying a former spouse.

¶ 46   In this case, the record reveals that the parties entered into a marital settlement agreement where George agreed to pay Elsa a portion of his disability benefits after receiving them. A marital settlement agreement is a contract, and therefore, we must treat it as such. See *In re Marriage of Dynako*, 2021 IL 126835, ¶ 15 ("A marital settlement agreement is construed in the same manner as any other contract" and the court "must therefore ascertain the parties' intent from the language of the agreement itself."); see also 750 ILCS 5/502(e) (West 2018) ("Terms of the agreement set forth in the judgment are enforceable *** as contract terms."). The express language of the marital settlement agreement was that the disability benefits

---

[4]We note that the *Mansell* decision is not limited to only community property states, as the *Mansell* Court explained in a footnote,

"[t]he language of the Act covers both community property and equitable distribution States, as does our decision today. Because this case concerns a community property State, for the sake of simplicity we refer to § 1408(c)(1) as authorizing state courts to treat 'disposable retired or retainer pay' as community property." *Mansell*, 490 U.S. at 584 n.2.

were marital property and that, if the federal government did not send the payments directly to Elsa, George "shall pay directly to" Elsa "as long as he receives said pay." It matters not that the marital settlement agreement did not contain a specific indemnification provision, as there is no question of the voluntariness of the agreement and the language expressed a clear intent on the part of George to pay to Elsa benefits that he received after he received them.

¶ 47    The circuit court did not order George to make these payments; instead, George agreed to use his disability benefits how he saw fit after receiving them. Because *Mansell* does not prevent George from entering into a marital settlement agreement, it does not preempt the circuit court from entering an order incorporating such a provision in an agreement. Nor can it be argued that the circuit court is required to reopen an agreement that had been final for nearly 30 years at the time of the initiation of these proceedings. In fact, the *Mansell* Court expressly noted that a circuit court's decision about whether it should reopen a final settlement agreement or whether that final judgment was *res judicata* was an issue of state law over which the United States Supreme Court had no jurisdiction. *Mansell*, 490 U.S. at 586 n.5. Finally, the United States Supreme Court denied review after the California Court of Appeals later held that the divorce judgment containing the agreement would not be reopened. See *In re Marriage of Mansell*, 265 Cal. Rptr. 227 (Ct. App. 1989), *cert. denied*, 498 U.S. 806 (1990).

¶ 48    Based on our review of these cases, we see no limitation by the United States Supreme Court on how a veteran can use his benefits once he receives them. Put simply, federal law does not prohibit a veteran from using the disability payments he receives in any way he chooses, as long as the funds are first paid to the veteran. In fact, the Act expressly indicates the liberty a veteran has in the usage of his disability payments after receiving them. See 38 U.S.C. § 5301(a)(3)(B) (permitting a veteran to use disability benefits to repay loans, as long as the payments are "separately and voluntarily executed by the [veteran]").

¶ 49    Additionally, courts from other jurisdictions have concluded that federal law does not preempt a veteran from using his disability benefits to pay a former spouse. See *Yourko v. Yourko*, 884 S.E.2d 799, 804 (Va. 2023) (upholding an agreement between the former spouses where the veteran husband agreed to pay disability payments to his former wife because "federal law does not prohibit a veteran from

using military disability pay in any manner he or she sees fit, provided the money is paid directly to the veteran first"); *Martin v. Martin*, 520 P.3d 813, 817-20 (Nev. 2022) (upholding a settlement agreement between former spouses where disability payments were paid to a former spouse, finding that federal law does not preempt enforcement of the divorce decree); *Jones v. Jones*, 505 P.3d 224, 230 (Alaska 2022) (finding that federal law does not preclude state courts from enforcing a negotiated settlement agreement in which a military spouse promised to pay another a share of the military spouse's disability benefits, reasoning that " '[i]t's one thing to argue about a judge's power to require *** a duty to indemnify,' but 'another matter entirely to require a litigant to perform what he has promised in a contract' " (quoting 2 Mark E. Sullivan, *The Military Divorce Handbook: A Practical Guide to Representing Military Personnel and Their Families* 670, 691 n.7 (3d ed. 2019))).

¶ 50     The decisions in the aforementioned cases reveal the importance of contract law and reinforce the value of allowing divorcing spouses to agree to certain terms, regardless of whether those terms reflect what a court could or would be able to order. We find *Yourko*, *Martin*, and *Jones* instructive and hold that, in this case, federal law did not preempt section 502, the agreement section in the Marriage Act, which authorized the circuit court to enter a judgment incorporating a marital settlement agreement that George voluntarily executed to use the disability payments that he received for a purpose that he chose—to pay Elsa pursuant to the marital settlement agreement. Therefore, we will require him to make the payments to Elsa that he agreed to make in the marital settlement agreement. See *Jones*, 505 P.3d at 230.

¶ 51                                    2. Jurisdiction

¶ 52     In general, a final judgment is conclusive after the passage of 30 days. *Waggoner v. Waggoner*, 78 Ill. 2d 50, 53 (1979). "However, a court in a divorce proceeding retains jurisdiction for the purpose of enforcing its decrees." *Id.* According to the doctrine of *res judicata* " ' "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." ' " *Spiller v. Continental*

- 14 -

*Tube Co.*, 95 Ill. 2d 423, 432 (1983) (quoting *La Salle National Bank v. County Board of School Trustees of Du Page County*, 61 Ill. 2d 524, 528 (1975), quoting *People v. Kidd*, 398 Ill. 405, 408 (1947)). " '*Res judicata* promotes judicial economy by preventing repetitive litigation and also protects parties from being forced to bear the unjust burden of relitigating essentially the same case.' " *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 45 (quoting *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004)).

¶ 53    We note that George waited nearly 30 years before collaterally challenging the agreement he voluntarily executed. This court has held that collateral attacks on divorce decrees involving property settlements are subject to *res judicata*. See *Waggoner*, 78 Ill. 2d at 55 (finding the divorce decree was *res judicata*, as the "plaintiff has not made any demonstration that circumstances have changed so as to warrant a modification of the child-support provisions of the decree"); *Roe v. Roe*, 28 Ill. 2d 232, 236 (1963) (upholding the validity of a divorce decree where husband waited 10 years to collaterally challenge, as void, the property settlement portion of the divorce decree that was "complete and valid on its face").

¶ 54    In this case, George and Elsa negotiated and signed a marital settlement agreement, which was incorporated into their judgment of dissolution of marriage. In so doing, they executed a valid, unambiguous, and legally binding contract. The marital settlement agreement provided that George would pay Elsa a portion of his military disability payments that he received. Based on our review of *Mansell* and *Howell*, this provision of the marital settlement agreement may be enforced based on contract principles. Moreover, the circuit court retained jurisdiction of the cause to enforce all terms of the judgment of dissolution of marriage.

¶ 55    We reiterate that federal preemption is not applicable in a case where the circuit court did not order payment but, instead, the parties entered into an agreement that required George to pay Elsa disability benefits that he received. Additionally, we find, pursuant to the express authority granted to state courts by *Mansell*, 490 U.S. at 586 n.5, that *res judicata* applies and the agreed-upon obligations cannot now be relitigated because (1) George and Elsa are the same parties in the original proceedings, (2) the judgment of dissolution of marriage containing the marital settlement agreement is a valid final judgment, and (3) the present action enforces the original judgment for dissolution without modifying the judgment or

introducing new matters that could not have been addressed in the original proceeding. See *Martin*, 520 P.3d at 815 (holding that "state courts do not improperly divide disability pay when they enforce the terms of a negotiated property settlement as res judicata, even if the parties agreed on a reimbursement provision that the state court would lack authority to otherwise mandate"); see also *In re Marriage of Weiser*, 475 P.3d 237, 248-49 (Wash. Ct. App. 2020) (finding *res judicata* applied to enforcement of a divorce decree where the lower court enforced the original terms of the decree and did not modify the property disposition and rejecting the argument that *Howell* barred the distribution of military disability pay).

¶ 56     Accordingly, we find that the federal preemption doctrine does not apply, the circuit court was not divested of jurisdiction, and the marital settlement agreement was not void, as the circuit court possessed both subject-matter and personal jurisdiction at the time the judgment of dissolution was entered and it retained jurisdiction. *LVNV Funding, LLC*, 2015 IL 116129, ¶ 38 (void judgment is one entered without the court having jurisdiction).

¶ 57                              C. Attorney Fee Award

¶ 58     Lastly, George argues that the circuit court erred when it entered the attorney fees award pursuant to the order of contempt because it was based on a void order, the marital settlement agreement incorporated in the judgment of dissolution of marriage. We disagree.

¶ 59     Section 502(e) of the Marriage Act permits the terms of the parties' agreement set forth in the judgment to be enforced by all remedies available for the enforcement of the judgment, including contempt. 750 ILCS 5/502(e) (West 2018). Section 508(b) of the Marriage Act authorizes the recovery of costs and legal fees from a party who, without a compelling cause or justification, refuses to comply with an order or judgment. *Id.* § 508(b); see *Nottage v. Jeka*, 172 Ill. 2d 386, 391 (1996). A circuit court has discretion to determine the attorney fee award. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13 ("The circuit court's decision to award attorney fees will not be disturbed absent an abuse of discretion."). Because the attorney fees were not awarded pursuant to a void order but were instead based on the circuit court enforcing a valid judgment incorporating a settlement agreement

that George voluntarily executed, the court did not err in entering an attorney fee award for George's failure to comply with that agreement.

¶ 60                                    III. CONCLUSION

¶ 61        We find that the circuit court did not err when it enforced the marital settlement agreement between the parties because federal law did not preempt state law (section 502, the agreement section, in the Marriage Act) or prevent George from agreeing to pay to Elsa a portion of his veterans' disability benefits after he had received them. Moreover, because the circuit court retained jurisdiction to enforce all terms of the judgment of dissolution, the judgment was not void, and the circuit court did not err when it awarded Elsa attorney fees for George's failure to comply with the terms of the marital settlement agreement. Accordingly, we affirm the judgments of the appellate court and the circuit court.

¶ 62        Judgments affirmed.