NOTICE
Decision filed 06/05/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250166-U

NO. 5-25-0166

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| PENNY DOOLIN, | ) | Macon County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 16-D-504 |
| | ) | |
| GREG DOOLIN, | ) | Honorable |
| | ) | Phoebe S. Bowers, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Vaughan and Hackett concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We reverse the circuit court's order directing Greg Doolin to pay Penny Doolin the same share of his military pension from sources other than his exempt disability benefits. We affirm the circuit court's order denying Greg Doolin's request to modify the 2018 maintenance award.

¶ 2     Penny Doolin (Penny) and Greg Doolin (Greg) married in 1990 and divorced in July 2018. Pursuant to their marital settlement agreement (MSA), Penny was awarded monthly maintenance and a future one-half share of Greg's military retirement pension.

¶ 3     In 2024, Greg was involuntarily retired from the United States Army due to a medical disability. Thereafter, Greg's retirement benefits were disability-based. Penny sought her MSA-awarded share of Greg's military pension from the applicable federal agency, but her request was

1

denied because Greg's retirement benefits were now disability-based and thus no longer matched the wording of the pension benefit designated in the MSA.

¶ 4 After his medical disability-based retirement, Greg filed a petition seeking to modify maintenance, contending that there had been a substantial change in the parties' financial circumstances. Penny filed a motion asking the circuit court to order Greg to pay her the monthly pension amount provided for in the MSA.

¶ 5 The circuit court denied Greg's petition to modify maintenance and ordered Greg to pay Penny the MSA-designated monthly pension amount from "other sources of income." Following the denial of Greg's request for reconsideration of both issues, he timely appealed.

¶ 6                                    I. BACKGROUND

¶ 7 The parties' MSA provided Penny monthly maintenance of $745.73. Greg was also required to maintain a $100,000 life insurance policy with Penny as the beneficiary so long as the maintenance award remained intact. The MSA also included a provision which awarded Penny: "one-half of the HUSBAND'S disposable military retired pay the HUSBAND would receive had HUSBAND been eligible to receive military retired pay as an E-7 on May 2, 2018[,] with a retired base pay of $3,356.20 and with 1,879 reserve retirement points earned during the marriage." Greg was still active in the military when the parties divorced.

¶ 8 In 2024, Greg was involuntarily retired from the military based upon a medical disability. Early in 2024, Greg began receiving Concurrent Retirement and Disability Pay of $2,045 per month from the Defense Finance and Accounting Services (DFAS) on behalf of the Department of Defense. Greg was also awarded a disability pension from both the Veteran's Administration (VA) and the Social Security Administration (SSDI). On June 9, 2023, Greg began receiving his

2

$2,561.30 monthly SSDI benefits, and on March 1, 2024, Greg began receiving his $3,946.26 monthly VA benefits.

¶ 9     In March 2024, Penny filed an application with the DFAS seeking a division of Greg's retirement pay pursuant to the Uniformed Services Former Spouses' Protection Act (USFSPA) (10 U.S.C. § 1408 (2018)). The DFAS denied Penny's request stating: "The entire amount of the member's retired/retainer pay is based on disability; there are no funds available for payment under the USFSPA."

¶ 10     On April 2, 2024, Greg filed a petition to modify maintenance contending that there had been a substantial change in the financial circumstances of both parties. He argued that all benefits he received were based upon his medical disability instead of his military retirement pay. He argued further that Penny's increased employment income and receipt of an inheritance eliminated her ongoing need for maintenance.

¶ 11     On May 6, 2024, Penny filed a petition asking the circuit court to order Greg to pay her $1,678.10 per month, which equaled her 50% share of what would have been Greg's military retirement benefit as specified in the MSA. She also objected to Greg's petition to modify maintenance.

¶ 12     On June 18, 2024, Penny filed an amended financial affidavit showing her gross monthly income of $3,920.73, which included the monthly $745.73 maintenance award. She reported monthly expenses of $2,017.54. Her checking, savings, and money market account balances totaled $28,251.25. Penny also had a 403(b)-retirement account worth approximately $32,101.

¶ 13     Greg filed his amended financial affidavit on September 15, 2024, showing his gross monthly income of $10,132, which included $1,572 in Supplemental Social Security Income (SSI) for the benefit of his current wife's disabled grandchildren. He reported monthly expenses

3

exceeding $6,900. His checking and savings account balances totaled $1,700, and he reported no other monetary or investment accounts.

¶ 14    The circuit court held a hearing on the petitions on October 2, 2024. Penny testified that she had no formal education past high school; she stayed home with a minor child during the marriage; she started working part-time when her child started school; and she is currently employed on a full-time basis. She reported approximate monthly expenses, not including payroll deductions, at $2,017. In 2023, Penny received an inheritance which totaled $132,995. From this sum, she funded a Roth IRA with $7,500 and gifted $10,000 to her daughter and $3,477 to a friend who had helped her father. She also used the inheritance to remodel her bathroom ($10,800), pay off a credit card balance ($2,116), and purchase new tires for her vehicle ($517). She gifted $1,000 to her church and to a friend, paid for surgical bills and her father's medication ($1,615), paid property taxes ($1,768), and paid off the outstanding mortgage balances on her father's home ($4,181) and her own condominium ($61,786).

¶ 15    Greg testified that he was involuntarily retired from the military based upon his disability. His current wife stopped working in 2023 to care for him while he was going through the medical separation process from the military, and to care for the disabled grandchildren living in their home.

¶ 16    Following the hearing, the circuit court denied Greg's petition to modify maintenance. Acknowledging the disability-based nature of Greg's retirement benefits, the court ordered Greg to pay Penny $1,678.10 per month (half of the $3,356.20 retired base pay referenced in the MSA) from "other sources of income." On February 4, 2025, the circuit court denied Greg's motion to reconsider, and he timely appealed.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, Greg argues that the circuit court erred when it ordered him to pay Penny $1,678.10 every month from "other sources of income." Greg also argues that the circuit court abused its discretion in denying his petition to modify maintenance.

¶ 19                          I. Division of Retirement Benefits

¶ 20    The circuit court ordered Greg to make a monthly payment to Penny which matched the original MSA division of Greg's military pension. "A marital settlement agreement is construed in the same manner as any other contract." *In re Marriage of Dynako*, 2021 IL 126835, ¶ 15 (citing *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009)). On appeal, the reviewing court is required to determine the parties' intent from the language of the marital settlement agreement. *Id.* Contract interpretation involves questions of law and is subject to *de novo* review. *Id.*

¶ 21    At the time of the parties' MSA, they failed to account for the contingency that Greg would be forced to retire from his military employment due to a medical disability. Accordingly, the MSA failed to include an indemnification period. We find that the circuit court's order for Greg to pay Penny her MSA-designated share of his pension from non-disability income is error, because Greg's income is solely based on his medical disability and the disabilities of his current wife's grandchildren, and federal law and Illinois caselaw citing federal law supports Greg's argument.

¶ 22    The supremacy clause (U.S. Const., art. VI) requires courts to accept that "federal law *** is the supreme law of the land." *In re Marriage of Winters*, 2026 IL App (5th) 250283, ¶ 31 (citing *In re Marriage of Tronsrue*, 2025 IL 130596, ¶ 38). Issues involving preemption of state law may occur because of this supremacy. *Id.* " 'A state law conflicts with federal law when it " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " ' " *Id.* (quoting *Tronsrue*, 2025 IL 130596, ¶ 39, quoting *English v. General Electric*

*Co.*, 496 U.S. 72, 79 (1990), quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). When a state law conflicts with federal law, the state law is deemed null and void. *Id.* (citing *Performance Marketing Ass'n v. Hamer*, 2013 IL 114496, ¶ 14).

¶ 23    In 1981, the United States Supreme Court considered whether division of military retirement pay in a state divorce case was preempted by federal law. *Id.* ¶ 35 (citing *McCarty v. McCarty*, 453 U.S. 210, 219 (1981)). The Supreme Court determined that "Congress has neither authorized nor required the community property division of military retired pay" (*McCarty*, 453 U.S. at 232) but it "has weighed the matter, and '[i]t is not the province of state courts to strike a balance different from the one Congress has struck.' " *Id.* at 236 (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 590 (1979)).

¶ 24    Following *McCarty*, the United States Congress passed the Uniformed Services Former Spouses' Protection Act to protect military spouses. 10 U.S.C. § 1408 (1982). The USFSPA allowed "disposable retired pay" to be classified as a marital asset, and thus, permitted "disposable retired pay" to be divisible in a divorce. *Id.* However, Congress excluded disability benefits from "disposable retired pay." *Id.* § 1408(a)(f)(A)(ii).

¶ 25    After Congress passed the USFSPA, the Supreme Court interpreted the statutory language in *Mansell v. Mansell*, 490 U.S. 581 (1989). In *Mansell*, the parties entered into a property settlement that required the husband to pay 50% of his retirement benefits to his former wife, including the amount waived, so that husband could receive disability benefits. *Id.* at 585-86. The husband asked the state court to modify the order to omit the waived portion of retirement pay so he could receive disability benefits. *Id.* The state court refused to modify the decree. *Id.* at 586-87. The husband appealed to the Supreme Court. The Supreme Court reversed, holding that federal law preempted state courts from treating the waived portion of divorce military retirement pay as

6

community property, and that the USFSPA "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Id.* at 594-95.

¶ 26    In *Howell v. Howell*, 581 U.S. 214, 215-16 (2017), the Supreme Court revisited the preemption issue. The Howells were divorced in 1991, and the state court awarded the wife 50% of the husband's military retirement. *Id.* at 218-19. Upon retirement, the husband began receiving military retirement. *Id.* at 219. Years later, the husband was declared 20% disabled, and he chose to receive disability benefits which required him to waive $250 of his previous military retirement pay. *Id.* The waiver of that portion of military retirement pay resulted in a reduction of the amount received by the ex-wife. *Id.* The ex-wife filed a motion to enforce the original amount she was awarded, and the state court granted her request. *Id.* On husband's appeal, the Supreme Court reversed the state court's ruling, citing *Mansell*, and finding that federal law preempted the state court's attempt to treat the disability pay as divisible community property. *Id.* at 220. While the Supreme Court recognized the monetary hardship that its ruling could impose upon divorced spouses, that hardship did not overcome the statutory preemption that prevented state courts from distributing anything other than disposable pay, which did not include disability benefits. *Id.* at 222-23.

¶ 27    The circuit court ordered Greg to pay a monthly amount which equaled the amount of retirement benefits Penny would have received pursuant to the MSA ($1,678.10). In its written order, the court stated: "It is inequitable to interpret the [MSA] language so that Penny does not receive any portion of the military disability pay." The court concluded that Greg had the financial means to pay the monthly amount from "a source of funds other than his military disability

7

benefits." The circuit court found that since the dissolution, Greg's gross monthly income had doubled, while Penny's remained essentially the same.

¶ 28    We find that the MSA language is clear and unambiguous in that Greg was directed to pay Penny 50% of his "disposable military retired pay." Upon his involuntary medical retirement, he was no longer eligible to receive "disposable military retired pay." Thus, that provision of the MSA was preempted. See *Mansell*, 490 U.S. at 594-95. State courts "cannot order a veteran who elects to waive retirement pay for disability pay to indemnify a former spouse." *Tronsrue*, 2025 IL 130596, ¶ 45 (citing *Howell*, 581 U.S. at 222). Greg did not voluntarily agree to pay Penny out of his disability benefits and Penny cites to no MSA provision to the contrary. *Id.* The circuit court attempted to bypass the specific language agreed to by the parties in their MSA and recharacterize Greg's disability pay as "divisible retired pay."

¶ 29    An MSA is a contractual document, and courts must interpret contracts based upon rules and principles of contractual interpretation. See *In re Marriage of Andres*, 2021 IL App (2d) 191146, ¶ 51. If the language of an MSA is clear and unambiguous, courts should consider the language of the agreement in its plain and ordinary sense. Contractual interpretation is a question of law and is reviewed *de novo*. *Dynako*, 2021 IL 126835, ¶ 15 (citing *Blum*, 235 Ill. 2d at 33). The circuit court's order is an impermissible modification of a provision of the MSA. It is also contrary to established Supreme Court caselaw and more recent Illinois caselaw. See *Howell*, 581 U.S. at 220; *Mansell*, 490 U.S. at 594-95; *Winters*, 2026 IL App (5th) 250283, ¶ 44. Courts are prohibited from "ordering reimbursement or indemnification *** to restore that portion of retirement pay lost" due to a veteran's waiver of retirement pay for disability pay. *Howell*, 581 U.S. at 222; *Tronsrue*, 2015 IL 130596, ¶ 45.

8

¶ 30    The circuit court was presumptively aware that, to be consistent with federal law, Greg's monthly payment had to come from "a source of funds other than his military disability benefits." Although it did not cite *In re Marriage of Neilsen*, 341 Ill. App. 3d 863 (2003), the circuit court's order mirrors the result reached in that case. There, the husband made a post-retirement election to receive disability benefits which reduced the wife's agreed share of his military retirement. *Id.* at 864. On appeal, the court held that while disability benefits cannot be divided as marital property, the retiree may not use a disability election to diminish a former spouse's vested pension interest. *Id.* at 869. The appellate court confirmed that any retirement payment obligation must be satisfied from non-disability sources and remanded for the circuit court to determine whether such sources existed. *Id.* at 870.

¶ 31    We find that *Marriage of Neilsen* is distinguishable. Here, Greg did not voluntarily retire. He was forced to retire based upon the military's determination that he was now disabled. Additionally, he did not alter Penny's pension interest through a post-retirement election or reclassification of benefits. The principle underlying *Marriage of Neilsen*—that disability benefits cannot be divided, and that any award must be paid from a source of funds other than military disability benefits—was cited by the circuit court in its order. However, this case is factually distinguishable because the benefits Greg received after being forced to medically retire from the military were all disability-based.

¶ 32    The express wording of the MSA precludes the circuit court from ordering Greg to pay Penny her MSA-designated share of his retired pay benefits from "another source of funds." Because Greg was forced to retire, there was no indemnification provision in the MSA, and state courts cannot order a veteran who waives retirement for disability to indemnify his or her former

9

spouse, we reverse the circuit court's order on this issue. *Tronsrue*, 2025 IL 130596, ¶ 45 (citing *Howell*, 581 U.S. at 222).

¶ 33                                   II. Modification of Maintenance

¶ 34     The parties' MSA required Greg to pay Penny permanent monthly maintenance in the amount of $745.73. "Permanent" maintenance is modifiable unless the parties' agreement provided that the maintenance award was nonmodifiable. *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 14. The MSA here did not so provide. "Modification of a maintenance award must be based upon the factors outlined in [the Illinois Marriage and Dissolution of Marriage Act (Marriage Act)] and upon a showing of a substantial change in the circumstances of the parties." (Internal quotation marks omitted.) *In re Marriage of Lasota*, 125 Ill. App. 3d 37, 42 (1984); 750 ILCS 5/504 (West 2022). Thus, either the needs of the spouse receiving maintenance, or the ability of the spouse paying maintenance, must have changed. *In re Marriage of Schen*, 2015 IL App (1st) 130733, ¶ 132. If the party seeking a modification of a maintenance award shows a substantial change of circumstances, the court must then determine whether to terminate or modify the award. 750 ILCS 5/510(a-5) (West 2022).

¶ 35     When deciding whether to reduce or terminate an award of maintenance, a court must consider all factors set forth in sections 504(a) and 510(a-5) of the Marriage Act. *Blum*, 235 Ill. 2d at 36. A circuit court is not required to make explicit findings as to the factors it considered when entering a ruling under the Marriage Act. *Blum*, 235 Ill. 2d at 37.

¶ 36     The circuit court denied Greg's petition to modify his maintenance finding that there had not been a substantial change in circumstances to warrant either lowering or terminating his maintenance obligation to Penny. We review a circuit court's factual findings regarding a maintenance issue for a clear abuse of discretion. *Blum*, 235 Ill. 2d at 36. "A clear abuse of

discretion occurs when 'the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Id.* (quoting *People v. Hall*, 195 Ill. 2d 1, 20 (2000)).

¶ 37    The circuit court found that Greg's gross monthly income had almost doubled; that Penny's gross monthly income was essentially unchanged; and that while Penny received an inheritance of $133,000, she had spent most of it. We conclude that the circuit court's ruling was neither arbitrary, fanciful, nor unreasonable. Accordingly, we find that the circuit court's denial of Greg's petition to modify was not an abuse of discretion.

¶ 38                                III. CONCLUSION

¶ 39    For the foregoing reasons, we reverse Macon County circuit court's order directing Greg to pay the retirement pay agreed to in the parties' MSA from monetary sources not based on his medical disability. We affirm the circuit court's order denying Greg's request to modify the maintenance award to Penny.

¶ 40    Affirmed in part and reversed in part.