NOTICE
Decision filed 01/22/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250283-U

NO. 5-25-0283

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| AMY J. WINTERS n/k/a AMY J. BOWEN, | ) | Marion County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 13-D-183 |
| | ) | |
| JIMMY D. WINTERS, | ) | Honorable |
| | ) | J. Marc Kelly, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Boie and Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's order modifying the judgment of dissolution is affirmed where sufficient pleadings were filed to allow for modification, the petition for rule to show cause was properly denied, and the court did not misapply the law of federal preemption.

¶ 2    Petitioner, Amy J. Winters, now known as Amy J. Bowen, appeals the circuit court's judgment modifying the judgment of dissolution and denying the petition for rule to show cause. For the following reasons, we affirm the circuit court's judgment.

¶ 3                              I. BACKGROUND

¶ 4    On October 31, 2013, Amy filed a petition for dissolution from Jimmy. At the time, both Amy and Jimmy were unemployed, and Jimmy had retired from the Air Force. They had four

1

children, two of which were under the age of majority. Amy filed a petition for temporary relief requesting custody of the two youngest children. A temporary order entered on January 8, 2014, provided her with custody of the two minor children and required Jimmy to pay $2,000 a month in support.[1]

¶ 5    On August 15, 2014, Jimmy filed a *pro se* answer to the petition requesting joint custody and alleging that Amy had the capacity to work. He further alleged that the parties had already disbursed their assets and liabilities, leaving only his pension for consideration. On September 4, 2014, a hearing was held. Jimmy testified that he was receiving between $3,960 and $3,980 monthly in military retirement. He received an additional $1,900 in VA disability funds but that amount would be reduced to $1,672 after the parties divorced based on the ages of the children. He also received between $150 and $250 monthly for playing in a band. Amy testified that she wanted the "VA waiver clause" included in the judgment to protect her portion of Jimmy's pension because if Jimmy took more disability, the retirement pension would lessen, which "would obviously mean less money for me. And the VA waiver just protects against that." She further explained that the USAA loan, that was between $10,000 and $12,000, was taken out in both their names with the purpose of being a bridge for the time between Jimmy's retirement from active duty and the initiation of his retirement benefits, which could take several months. Amy's counsel argued, citing *Rose v. Rose*, 481 U.S. 619 (1987), that Jimmy's military retirement of $3,960 was subject to division by the court and asked it to award Amy 50% of his retirement. Counsel stated that they were not asking for a division of the VA benefits but were asking for the VA waiver clause to be placed in the order as an "identification clause," which would need to say, "that the

---

[1]The order did not clarify if this was $2,000 in child support or spousal support.

2

retiree would pay back the former spouse any money she loses if the retiree opts for VA payments or does anything else to reduce her share." Counsel further explained,

"So[,] in effect, what happens is *** that if he takes less miliary benefits and adds it to his VA benefits, *** [Amy] would continue to get the same amount of money[,] and he would have to make certain that she gets the same amount of money [she] would have had he not reduced his military benefit."

Following the presentation of argument at hearing, the court found grounds of irreconcilable difference were proven and took the remaining issues under advisement.

¶ 6    On October 3, 2014, the court issued a docket entry order setting child support at $1,047 per month beginning September 4, 2014, and reducing the child support to $748 a month or 20% of Jimmy's income beginning August 1, 2015. The ruling specifically relied on *Rose*, 481 U.S. at 630-34. Joint custody was awarded, with Amy named as the primary custodian. The docket entry noted that the parties were married for 25 years and ordered Jimmy's military pension to be split 50/50 or $1,980 commencing October 1, 2014, to Amy. The VA waiver clause was ordered to be included in the written order. Jimmy was ordered to reimburse Amy $1,117.84 for repairs to a vehicle and ordered responsible for the Scion car debt through USAA, any other USAA bank loan in the parties' names, and any deficiency on the resale of the Louisiana home. Amy's counsel was to draft a judgment for dissolution.

¶ 7    On October 28, 2014, the judgment of dissolution was entered pursuant to the terms set forth in the court's October 3, 2014, docket entry order. Paragraph J of the order stated,

"The gross retirement pay of Respondent's VA pension shall be divided equally between the parties commencing October 1, 2014. A Qualified Domestic Relations Order [QDRO], if necessary, will be submitted to divide said pension.

3

Further, Respondent shall pay back Petitioner any money she loses if the Respondent opts for VA benefits or does anything to reduce Petitioner's share of Respondent's pension.

Petitioner shall be awarded a survivor benefit designation (former spouse and child) for the purposes of receiving her 50% of the pension should Respondent predecease Petitioner."

¶ 8 On December 1, 2014, Jimmy obtained counsel who filed a motion for rehearing and modification of judgment, noting that credit cards were not addressed by the court. The motion further alleged that Jimmy already reimbursed Amy for the car repairs, the court erred in the child support calculation, and that the order awarded 50% of Jimmy's VA pension, but he did not have a "VA pension." The motion explained that Jimmy had a military retirement pension and received VA disability benefits, which were not marital property subject to division pursuant to 10 U.S.C. § 1408 (2012). The motion argued that Jimmy's monthly obligations were over 50% of his net income, resulting in a windfall to Amy, and further noted that Jimmy was made responsible for all of the parties' marital debt, leaving him unable to provide for himself.

¶ 9 On January 29, 2015, the court issued an order noting that the parties reached an agreement to resolve all issues raised in Jimmy's post-judgment pleading. The order reduced Jimmy's child support obligation to $875 a month from September 2014 through July 2015. Child support would be reduced to $625 a month beginning August 2015. The obligation would continue until the youngest child turned 18 or graduated high school, whichever was later. The reimbursement for vehicle repair was restated as "[Jimmy] shall reimburse [Amy] $1,117.84 for repairs to the vehicle within six months from the date of the October 28, 2014 Judgment." Jimmy withdrew his motion

for rehearing, Amy's last name was changed to Bowen, and the other terms of the October 28, 2014, judgment "remained in full force and effect."

¶ 10    On April 21, 2015, Amy filed a petition for rule to show cause. The petition contended that while Jimmy paid the $2,000 from his pension, he had not paid child support, and the current arrearage was $5,110. An order to show cause was issued the same day setting the matter for hearing. On May 12, 2015, Jimmy filed a *pro se* response to the petition to show cause. The response noted that nothing in the prior rulings required him to pay Amy $1,980 per month. He argued that the $2,000 Amy was receiving was for child support and it was her obligation to prepare a QDRO to divide his pension, which had not yet occurred, despite him telling Amy and her counsel what needed to be done and further stating that he was not allowed, by law, to prepare the documentation. Jimmy further stated that based on the payments issued, he had overpaid Amy $8,732.16 and claimed that Amy's counsel was simply harassing him.

¶ 11    A hearing was held on June 1, 2015. Amy testified that she received $2,000 monthly from September 2014 through April 2015 from Jimmy. She received an additional $350 in March, $500 in April, and $1 in May and June. She further agreed that she sent a text message to Jimmy that stated $2,375 was due each month, which was comprised of $875 for child support and $1,500 for pension. Jimmy argued that the original order was illegal because the Uniform Services Former Spouses' Protection Act limited the amount of disbursable income to that in his pension, not his disability payments. He agreed that the January 29, 2015, order withdrew the rest of his motion. Jimmy also referenced Respondent's exhibit No. 6, which listed his gross pay as $3,807, the VA waiver as $485, SBP costs of $102.32, and taxable income of $3,219.68. He testified that he contacted Amy's counsel and told him that he needed to file a QDRO and how to file the form with the military, but they took no action for seven months while he continued to overpay Amy.

5

He explained there was an overpayment because Amy would receive all the money due beginning from the divorce once they filed the form.

¶ 12    The court issued a docket entry order on June 1, 2015, that found reasonable confusion between the parties as to the issues presented. The court concluded that any violation of the order was not done with ill intent sufficient to hold Jimmy in contempt of court. The docket entry order found that Jimmy's arguments regarding the vehicle maintenance and child support "was meant to unnecessarily confuse an otherwise clear issue" and it further found Jimmy's child support payments of $1 in May and June 2015 suggestive of "intentions were less than honorable." Regardless of "such gamesmanship," the court could not find that Jimmy willfully violated the court's order relative to child support or pension distribution. The court denied Amy's petition to show cause but ordered Jimmy to pay $250 to Amy in attorney fees for his "delay of process as it unfolded." The order also required the parties to confer and determine the exact child support due and owing.

¶ 13    On July 22, 2015, the circuit court issued an order based on an agreement between the parties. The order stated, "Until disbursement of Respondent's retirement plan takes place by the military, Respondent shall pay by cashier's check directly to Petitioner commencing in July 2015 the sum of $1,609.84 per month." The order dispensed with any back pay required from the retirement pay but obligated Jimmy to continue to pay his regular child support and provided a schedule for payment of the $6,767 arrearage from July 2015 to May 2016. No language stating that the other terms of the judgment remained in full force and effect was included in this order.

¶ 14    On November 13, 2015, Amy filed a motion to enforce. The motion contended that at the time the military commenced disbursement of Jimmy's retirement benefits to her, it took out an additional $2,000 "as a deduction for certain monetary benefits" and she was receiving an amount

6

less than $600 per month. She further alleged that it was the intent of the court and the parties that she would receive full benefits, but Jimmy now refused to pay the additional $1,000 due. She alleged that the original request for maintenance was denied because she would receive a division of the military retirement and asked the court to order Jimmy to pay the additional $1,000 due or require Jimmy to pay her $1,000 as monthly maintenance. She also requested additional payments for each month in which she received less than the $1,609.84. Jimmy obtained legal counsel but no response to the pleading was filed.

¶ 15    On March 4, 2016, the motion proceeded to hearing. Amy's counsel argued that there was an agreement on January 29, 2015, based on adjustments. Counsel noted that "because of certain deductions that had to take place we did adjust the retirement downward *** and it resulted in an agreement at that time that [Amy] was to receive *** $1,609 and some change." Counsel explained that the administrator who handled the military retirement took out all the disability money. Counsel further argued that Jimmy did not "want to pay this extra thousand or at least one half of this $2,000 he receives under disability." Counsel contended, "that was clearly not the intent of the parties, wasn't the intent of the Court orders ***."

¶ 16    Jimmy's counsel argued that there was no "VA pension." Jimmy had an Air Force pension consisting of several parts. The gross pay was $3,833 and approximately $2,000 of that amount was disability which could not be used to pay Amy under the United States Code. Counsel argued that the July 2015 order only required Jimmy to pay $1,600 monthly until the retirement benefits were issued to Amy. It did not say that he had to continue to pay Amy $1,600 after the retirement benefits kicked in. Retirement benefits had been initiated, and she was receiving approximately $573 a month. The court stated it did not want to hear that argument again and denied counsel's request to call Jimmy as a witness.

7

¶ 17    On April 22, 2016, the circuit court issued an order granting Amy's motion to enforce. The order required Jimmy to continue to pay the sum of $1,609.84 consistent with the prior court's orders as it pertained to the division of retirement benefits. The order found Jimmy in arrearage of $8,500 for the retirement benefit set off, $861.73 for payments due and owing, and issued judgment in favor of Amy for $9,361.73, reflecting all amounts due from September 2015 to April 2016. In addition to the current child support and retirement benefits payments, the order required Jimmy to pay an additional $400 a month to Amy to pay down the arrearage and $450 to Amy for her attorney fees.

¶ 18    Jimmy appealed the decision. On July 31, 2017, this court issued an order affirming the circuit court's ruling. See *In re Marriage of Winters*, 2017 IL App (5th) 160217-U, ¶ 2. On December 11, 2017, the court issued a docket entry order finding the parties stipulated to arrearage of $30,877.93. Jimmy was ordered to pay December support of $1,034.84 by December 15, 2017, and pay arrearage of $750 a month beginning January 2018. He was also ordered to pay $2,400 in attorney fees in installments of $300 a month beginning January 2018.

¶ 19    On March 8, 2024, Amy filed a petition for rule to show cause. The petition alleged that Jimmy failed to pay Amy $1,609.84 from October 2023 through February 2024. An order to show cause was issued the same day setting the case for hearing. On March 22, 2024, Jimmy filed a petition to modify. The petition alleged that on September 18, 2023, he was notified by the Defense Finance and Accounting Service that they were terminating his Concurrent Retirement and Disability Pay (CRDP) and would pay him Combat Related Special Compensation (CRSC). He argued, citing 10 U.S.C. § 1408(c) (2024), that CRSC was not retirement pay. He further cited *Howell v. Howell*, 581 U.S. 214, 221-22 (2017), which stated that federal law preempted the States from treating waived military retirement pay as divisible community property. The petition

8

requested the court modify the current order for payment of equal division of the VA pension since he was no longer receiving a VA pension and vacate the order requiring Jimmy to reimburse Amy for the decrease in benefits.

¶ 20   On April 29, 2024, Amy moved to dismiss or strike Jimmy's petition to modify. Therein, Amy argued that the 2014 order was not subject to collateral attack. Argument on Amy's motion to dismiss was held on June 10, 2024. Following the hearing, the court took the matter under advisement. On July 2, 2024, the court denied Amy's motion to dismiss. It stated,

> "This court in the judgment for dissolution awarded each party 50% of respondent's VA pension. The judgment further orders that the 'Respondent shall pay back petitioner any monies she loses if Respondent opts for VA benefits or does anything to reduce Petitioner's share of Respondent's pension.' Subsequently Respondent's retirement pay was terminated and he was awarded combat related special compensation, which is not divisible in a state dissolution proceding [*sic*] pursuant to federal statute 10 U.S.C. 1408(c). The U.S. Supreme Court adressed [*sic*] this in *Howell v. Howell*[,] 137 S Ct 1400 (2017). The court cited its decision in *Mansell v. Mansell*[,] 490 US 581 (1989) saying, 'the Court held that federal law completely pre-empts the States from treating waived military retirement pay as divisible community property.['] The US supreme court decisions in *Mansell* and *Howell* control, and 10 USC 1408(c) pre-empts. Motion to Dismiss is denied."

¶ 21   On July 31, 2024, Amy moved for reconsideration. Therein, Amy argued that paragraph J of the October 28, 2014, judgment, that divided Jimmy's VA pension equally and required Jimmy to pay Amy any monies she lost if Jimmy opted for VA benefits or did anything to reduce Amy's share of Jimmy's pension, remained in full force and effect and was not modified. She further

9

noted the July 22, 2015, order which stated, "Until disbursement of Respondent's retirement plan takes place by the military, Respondent shall pay by cashier's check directly to Petitioner commencing in July 2015 the sum of $1,609.84 per month." She argued that Jimmy's failure to comply with section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(b) (West 2022)), and sections 2-1301(e) and 2-1401(c) of the Code of Civil Procedure (735 ILCS 5/2-1301(e), 1401(c) (West 2022)) precluded Jimmy from modifying the prior orders.

¶ 22    On August 23, 2024, the parties presented arguments for Amy's motion to reconsider. Following the argument, the court took the matter under advisement. On September 25, 2024, it issued an order stating,

> "The Petitioner correctly argues in her Motion to Reconsider that the court addressed the merits of Respondent's allegations in his Petition to Modify, without addressing the procedural defects in Respondent's Petition to Modify. 750 ILCS 5/510(b) provides, '(b) The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify reopening of a judgment under laws of this state.' The Petition to Modify does not allege conditions that justify reopening of a judgment, nor which laws of this state under which it is brought. For those reasons, the Motion to Reconsider is granted. The Order denying the Motion to Dismiss is vacated, and the Motion to Dismiss is granted without prejudice."

Thereafter, the court granted "petitioner" 30 days to file a pleading consistent with 750 ILCS 5/510(b) (West 2022).

¶ 23    On February 26, 2025, Jimmy filed a response to Amy's petition for rule to show cause denying the majority of the allegations. He also raised an affirmative defense based on *Howell* and

10

federal preemption of any order requiring him to pay an equal portion of his current pension to Amy.

¶ 24    A rule to show cause hearing was held on February 27, 2025. At the hearing, Jimmy testified that he stopped paying Amy because the money he was getting for his air force pension got turned over to combat disability pay. He explained that under federal law, disability pay was not entitled to disbursement, and he no longer had a pension; it was all disability. Jimmy explained that he received a 90% rating of disability by the VA, which changed his classification to "unemployable." A copy of the United States Air Force correspondence stating that he no longer had a pension and was switched to CRSC pay dated September 18, 2023, was placed into evidence. At that time, "the pension was switched over to the combat disability because it was all combat related." He stated that he was given the opportunity to backdate the award two years but declined the request. He further explained that the $1,000 he was previously paying was from his pension, but he no longer had a pension. He stated that he lost on appeal and therefore he continued to pay the $1,600 out of his pension. He was currently receiving $3,200 monthly for his combat disability benefits and an additional $2,300 from Social Security disability. Amy testified that she had not received the $1,609.84 per month from September 2023 to February 2025. Following the hearing, the court took the matter under advisement.

¶ 25    On March 10, 2025, the court issued a written order. The order found *Rose*, 481 U.S. at 630-34, applicable to the child support order, but it was unclear how the circuit court determined the appropriate language for paragraph J. The court order stated,

> "It is difficult to see how a court following the language in *Howell*, can
> fairly take into consideration future events like this when it was almost nine
> (9) years after the trial court's decision. However, in this case, the trial judge

11

attempted to specifically address that particular issue in Paragraph J of the Judgment of Dissolution. Unfortunately, the language used by the Court does not make it clear whether this was an attempt to reimburse or indemnify the Petitioner from any reductions as the amount is dollar for dollar for any decrease in pension and as such would be clearly barred by the Supreme Court rulings in *Mansell* and *Howell* or was the trial judge attempting to recalculate the spousal support considering that the Respondent's military pension was subject to reductions or waivers in the future.

This Court concludes that despite the trial court's reference to [the] *Rose* case as it pertains to child support, no such reference was made as it pertains to the spousal award of military pension benefits. Likewise[,] there were no calculations presented as to how the Court determined that a reduction of military benefits which are marital property and subject to division would result in a dollar for dollar reimbursement from other divided marital assets. Rather the Court simply ordered the Respondent to pay back the Petitioner for any loss if the Petitioner's share of the pension is reduced. This, unfortunately[,] is clearly barred following the rulings in both *Mansell* and *Howell*. As such, the Respondent is not in contempt of this Court's prior ruling because the Combat Related Special Compensation is a non-marital asset as exempted by 10 USC 1408 and change from his prior benefits to the CRSC eliminated the Respondent's obligation under Paragraph J. Petitioner's petition for Rule to Show cause is denied and effective September 1, 2023, the judgment of dissolution is modified to remove Paragraph J."

Amy timely appealed the ruling.

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, Amy argues that the order modifying the judgment must be reversed because no petition to modify was before the court. She further argues that the order modifying the judgment must be reversed because the circuit court misapplied the law of federal preemption. Jimmy argues that the circuit court decision should be affirmed.

¶ 28    Amy first argues that the circuit court's 2025 order is void and must be vacated because there was no pleading on file requesting the court to strike paragraph J of the judgment. The question of whether a judgment is void presents a question of law we review *de novo*. *People v. Williams*, 2017 IL App (1st) 123357-B, ¶ 15.

¶ 29    "The question whether a judgment is void or voidable depends on whether the court entering the challenged order possessed jurisdiction over the parties and the subject matter." *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998) (citing *People v. Davis*, 156 Ill. 2d 149, 155 (1993)). Void judgments occur only where there is a total lack of either subject matter or personal jurisdiction. *Id.* Void judgment may be attacked collaterally. *Id.* Conversely, a voidable judgment, "is one entered erroneously by a court having jurisdiction and is not subject to collateral attack." *Id.* "Once a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of law." *Id.* Jurisdiction is not lost due to " 'a mistake in determining either the facts, the law or both.' " *Id.* at 174-75 (quoting *Davis*, 156 Ill. 2d at 156).

¶ 30    "Personal jurisdiction may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction." *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 18 (citing *In re Marriage of Verdung*, 126 Ill. 2d 542, 547 (1989)). The trial court obtained jurisdiction over the parties after Amy filed her initial

13

petition for dissolution and Jimmy filed his counter petition. As such, the circuit court had personal jurisdiction over the parties.

¶ 31 "[S]ubject-matter jurisdiction refers to a tribunal's power to hear and determine cases of the general class to which the proceeding in question belongs." *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 13. "The Illinois Constitution vests the circuit courts with original jurisdiction of all 'justiciable matters' except" those granted directly to the Illinois Supreme Court. *Id.* (citing Ill. Const. 1970, art. VI, § 9). As long as the matter is justiciable and is not within the sole confines of the Illinois Supreme Court, a circuit court has subject-matter jurisdiction to consider the issue. *Id.* (citing *McCormick v. Robertson*, 2015 IL 118230, ¶ 20). Further evidence of the justiciability of the issues raised throughout the duration of these proceedings is found in the Act (750 ILCS 5/101 *et seq.* (West 2022)). More specifically, disbursement of marital assets and liabilities (see *id.* § 503), modification of certain orders (see *id.* § 610.5), and acceptance of any agreement under that Act (see *id.* § 502) are initially determined by the circuit court. See also *In re Marriage of Tronsrue*, 2025 IL 130596, ¶ 34 (citing *In re M.W.*, 232 Ill. 2d 408, 424 (2009)). As such, subject-matter jurisdiction, as it relates to the disbursement of the allowable parties' marital assets, exists pursuant to section 503 of the Act.

¶ 32 However, the supremacy clause (see U.S. Const., art. VI) requires every court to accept that "federal law *** is the supreme law of the land" and therefore, issues of preemption of state law can arise. *In re Marriage of Tronsrue*, 2025 IL 130596 ¶ 38. "A state law conflicts with federal law when it ' "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' " *Id.* ¶ 39 (quoting *English v. General Electric Co.*, 496 U.S. 72, 79 (1990) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). "If a state law conflicts with federal law, it is null and void." *Id.* (citing *Performance Marketing Association v. Hamer*, 2013 IL 114496,

14

¶ 14). A federal statute can preempt state law expressly or impliedly. *Id.* ¶ 39. Express preemption occurs "where Congress has expressly preempted state action." (Internal quotation marks omitted.) *Id.* There are two types of implied pre-emption: (1) "implied field preemption—where Congress has implemented a comprehensive regulatory scheme in an area, thus removing the entire field from the state realm;" or (2) "implied conflict preemption—where state action actually conflicts with federal law" (Internal quotation marks omitted.) *Id.* With this basic understanding of jurisdiction, we address Amy's arguments.

¶ 33    Amy relies on *Ligon v. Williams*, 264 Ill. App. 3d 701, 707 (1994) to argue that because no underlying pleading or request to strike paragraph J was before the court, the decision is void. In *Ligon*, the appellate court found that the circuit court's decision granting defendant custody of his daughter was void because no pleading existed to allow the court to transfer jurisdiction. *Id.* at 708-09. Similar outcomes are seen in *In re Marriage of Fox*, 191 Ill. App. 3d 514, 521-22 (1989) and *Suriano v. Lafeber*, 386 Ill. App. 3d 490, 491 (2008). We would also be remiss if we did not note that *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002), relied on *Ligon* with a parenthetical stating, a "court's authority to exercise its jurisdiction and resolve a justiciable question is invoked through the filing of a complaint or petition." Indeed, this court has also followed this precedent. See *In re Marriage of Britton*, 2022 IL App (5th) 210065, ¶¶ 39-42 ("trial court's order requiring Brent to pay 50% of Kristi's supplemental insurance" for a period prior to the filing of "Kristi's rule to show cause petition is void for a lack of subject matter jurisdiction."). Accordingly, while we agree with Amy's argument in theory, we do not find it applicable in the current situation.

¶ 34    The current pleading at issue is the March 6, 2024, petition for rule to show cause filed by Amy regarding Jimmy's alleged nonpayment of his military benefits. The first paragraph of that

pleading is a direct quote from the circuit court's October 28, 2014, judgment. Despite referencing two more orders issued on July 22, 2015, and April 22, 2016, Amy argued that "despite the specific terms of paragraph J of the October 28, 2014, Judgment ***, Respondent has failed to pay $1,609.84 per month in retirement benefits." Jimmy's answer to Amy's petition responded to the allegations but also raised an affirmative defense. The affirmative defense was related to paragraph J, citing 10 U.S.C. § 1408(c) and *Howell*, 581 U.S. 214 (2017). Jimmy argued that since he was no longer receiving a VA pension "the prior orders requiring Respondent to pay an equal portion of his pension or reimburse for any decrease in benefits payable to the Petitioner are preempted and therefore void." As such, the issue of voidness was raised in the pleadings and the trial court had subject matter jurisdiction to address the language to determine if it was preempted by federal law. See Ill. Const. 1970, art. VI, § 9 (circuit courts are courts of general jurisdiction having original jurisdiction over all justiciable controversies except those specifically excluded); see also *Gendron v. Chicago & North Western Transportation Co.*, 139 Ill. 2d 422, 426 (1990) (circuit court ruled that plaintiffs' cause of action was preempted). Accordingly, we disagree with Amy's contention that the circuit court had no authority to address the language in paragraph J or determine if such language was preempted. As such, the 2025 order is not void.

¶ 35    However, we do not find Jimmy's affirmative defense the only basis to modify the judgment of dissolution and strike the language in paragraph J. Here, in addition to using erroneous language to identify Jimmy's Air Force retirement pension as a "VA pension," paragraph J included VA waiver language that required Jimmy to pay Amy the same amount monthly regardless of whether his retirement pension decreased due to an increase in disability benefits. The allowable and appropriate division of military retirement plans is statutory. See 10 U.S.C.

16

§ 1408(c) (West 2024). As such, preemption must be considered as well as a history of the United States Supreme Court cases that brings us to this point.

¶ 36     In 1981, the United States Supreme Court considered whether division of a military retirement pay in State dissolution proceedings was preempted by federal law. *McCarty v. McCarty*, 453 U.S. 210 (1981). The McCarty's were married in 1957, and the husband joined the United States Army. *Id.* at 216. The parties separated in 1976 and disputed whether the husband's military retirement was community property. *Id.* at 216-17. Ultimately, the court found the retirement benefits were quasi community property and split the husband's retirement benefits awarding the wife 50% of the benefits. *Id.* at 218. The husband appealed, contending the "federal scheme of military retirement benefits pre-empts state community property law, the Supremacy Clause," and precluded the trial court from awarding his wife a portion of his retired pay. *Id.* at 218. The California appellate court disagreed and affirmed the award. *Id.* at 218-19. The California Supreme Court denied husband's petition for rehearing. *Id.* at 219.

¶ 37     The United States Supreme Court addressed the case and noted that "Congress has neither authorized nor required the community property division of military retired pay." *Id.* at 232. Ultimately, it stated, "Congress has weighed the matter, and '[i]t is not the province of state courts to strike a balance different from the one Congress has struck.' " *Id.* at 236 (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 590 (1979)). The California lower court decisions were reversed, and the case was remanded for further proceedings consistent with the decision. *Id.*

¶ 38     In response to *McCarty*, the 1982 federal legislature passed the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (1982). Therein, Congress allowed "disposable retired pay" to be classified as a marital asset which permitted its disbursement in a divorce. *Id.* However,

17

disability benefits were expressly excluded from the definition of disposable retired pay. *Id.* § 1408(a)(f)(A)(ii).

¶ 39     After the law changed, the United States Supreme Court interpreted the amended language in *Mansell v. Mansell*, 490 U.S. 581 (1989). In *Mansell*, the parties entered into a property settlement that required the husband to pay the wife 50% of his total retirement pay, including that portion of retirement pay waived so husband could receive disability benefits. *Id.* at 585-86. He later moved to modify the decree to omit the portion of retirement pay that was waived so he could receive disability benefits. *Id.* The California courts refused to modify the decree. *Id.* at 586-87.

¶ 40     The United States Supreme Court reversed the decision, holding that federal law forbade California from treating the waived portion as community property in the divorce and such action was completely preempted by federal law. *Id.* at 588. It held that the new Act did not grant authority to the States to treat the total retired pay as community property because Congress excluded authority to address the disability-related waived portion of military retirement pay. *Id.* at 594-95.

¶ 41     In *Howell*, the court again considered preemption and section 1408. *Howell*, 581 U.S. at 215-16. The Howells were divorced in 1991, and the trial court awarded the wife 50% of the husband's military retirement. *Id.* at 218-19. The husband retired in 1992 and began receiving military retirement, half of which went to the wife. *Id.* at 219. 13 years later, the husband was found to be 20% disabled, and he elected to receive disability benefits requiring him to waive $250 of his previous military retirement pay. *Id.* This reduced the amount the wife was receiving. *Id.* The wife asked the court to enforce the original decree and force the husband to pay the same amount before his disability and the trial court granted the request, which was later affirmed on appeal. *Id.* The United States Supreme Court disagreed with the rulings and, citing *Mansell*, found

18

that federal law completely preempted the state courts from treating the husband's disability pay as part of his retirement pay. *Id.* at 220. It found that vesting was inapplicable and an order requiring the husband to reimburse or to indemnify the wife's payment was "semantic and nothing more." *Id.* at 222. While it recognized the hardship that could work on divorcing spouses, the hardship did not overcome the statute that preempted state courts from distributing anything other than disposable pay, which did not include disability benefits. *Id.* at 222-23.

¶ 42    Therefore, the U. S. Supreme Court decisions interpreted section 1408(c) and held that federal preemption precluded a trial court from ordering a disabled military retiree to use his military disability benefits to pay maintenance. *Howell*, 581 U.S. at 220; *Mansell*, 490 U.S. at 594-95. Under nearly similar facts to those seen here, the United States Supreme Court specifically found that requiring a disabled military retiree to use his disability benefits to make up the difference between the original award of retirement benefits to the spouse and the reduced amount after disability was established was contrary to law and could not be enforced if such language was judicially ordered. See *Howell*, 581 U.S. at 221-22.

¶ 43    Here, as in *Howell*, the language in paragraph J was included in the judgment at the direction of the trial court. However, the original trial court was preempted from such disbursement and had no authority to require Jimmy to make the same monthly payments to Amy if Jimmy's pension was reduced due to an increase in disability benefits. *Id.* The trial court's inclusion of the VA waiver language, was an attempt to "displace the federal rule" and stood "as an obstacle to the accomplishment and execution of the purposes and objectives of Congress." *Id.* at 222. As such, the action was preempted as a "state action [that] that actually conflicts with federal law." (Internal quotation marks omitted.) *In re Marriage of Tronsrue*, 2025 IL 130596, ¶ 39.

19

¶ 44    "If a state law conflicts with federal law, it is null and void." *In re Marriage of Tronsrue*, 2025 IL 130596. ¶ 39. Void orders may be attacked at any time, either directly or collaterally. *Id.* ¶ 33. Challenges to voidness are " 'not subject to forfeiture or other procedural restraints.' " *People v. Price*, 2016 IL 118613, ¶ 30 (quoting *People v. Castleberry*, 2015 IL 116916, ¶ 15). "Illinois law provides that courts have an independent duty to vacate void orders and may *sua sponte* declare an order void." *Delgado v. Board of Election Commissioners of Chicago*, 224 Ill. 2d 481, 486 (2007) (citing *People v. Thompson*, 209 Ill. 2d 19, 27 (2004)).

¶ 45    Here, the initial trial court was preempted by federal law from distributing Jimmy's VA disability benefits in the manner it did. *Howell*, 581 U.S. at 220. Federal preemption regarding that portion of the judgment left the trial court without subject matter jurisdiction to distribute any portion of Jimmy's VA disability benefits. *Id.* "An order entered by a court without subject matter jurisdiction is void." *In re Marriage of Kneitz*, 341 Ill. App. 3d 299, 307 (2003); see *In re Marriage of Dobbs*, 358 Ill. App. 3d 308, 310 (2005) (same); *Diaz v. Provena Hospitals*, 352 Ill. App. 3d 1165, 1173 (2004) ("An order or judgment is void if the court lacked personal or subject matter jurisdiction or otherwise lacked the power to decide the particular matter presented to it."). " 'Jurisdiction involves not only the power to hear and determine a given case but also the power to grant the particular relief requested, and every act of the court beyond its jurisdiction is void.' " *Id.* (quoting *Miller v. Balfour*, 303 Ill. App. 3d 209, 215 (1999)). "The States cannot, in the exercise of control over local laws and practice, vest state courts with power to violate the supreme law of the land." *Kalb v. Feuerstein*, 308 U.S. 433, 439 (1940). "It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack." *Id.* at 438. However, if Congress creates legislation that exempts judicial acts, those same acts are subject to collateral attack and being nullities. *Id.* at 438-39. As such, even if

20

no pleadings had been filed, the trial court's striking of paragraph J from the initial judgment was proper.

¶ 46　Amy also argues that the trial court's striking of paragraph J was contrary to Illinois statute. In support she argues that section 510(b) of the Act (750 ILCS 5/510(b) (West 2022)) disallows reopening property distributions unless the court finds the "existence of conditions that justify the reopening of a judgment under the laws of this State." She also argues that the timing requirements of neither section 2-1301(c) of the Code of Civil Procedure (Code) (725 ILCS 5/2-1301(c) (West 2022)) nor section 2-1401 of the Code (*id.* § 2-1401) were triggered and therefore, the court was without authority to modify the judgment.

¶ 47　We again disagree. As noted above, the language in paragraph J was preempted by federal statute and therefore, paragraph J was void *ab initio* due to federal preemption. Voidness is sufficient to show the "existence of conditions that justify the reopening of a judgment under the laws of this State." See *In re Marriage of Miller*, 363 Ill. App. 3d 906, 914 (2006) (Allowing a court to reopen a property division judgment under section 510(b) when "the judgment is void."). As voidness can be addressed at any time (see *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002)), and courts may consider voidness issues *sua sponte*, (see *Delgado*, 224 Ill. 2d at 486), no contrary conclusion is applicable upon consideration of those statutes.

¶ 48　Amy's second issue on appeal contends that the denial of her petition for rule to show cause and modification of the judgment of dissolution must be reversed where the trial court misapplied the law of preemption. Typically, the standard of review for the denial of a petition for rule to cause is an abuse of discretion. *In re Marriage of Pond*, 2025 IL App (3d) 240696-U, ¶ 27 (citing *Eckerty v. Eastern Illinois Foodbank*, 2022 IL App (4th) 210537, ¶¶ 31-32). However, Amy requests this court review the issue *de novo*, arguing that the issue is one of statutory interpretation,

21

federal preemption, and other questions of law. We agree, and therefore we consider the issue *de novo*. *Haage v. Zavala*, 2021 IL 125918, ¶ 41.

¶ 49 Amy's initial argument contends that the decision must be reversed because the decision in *Winters v. Winters*, 2017 IL App (5th) 160217-U, the first appeal of this case is "almost indistinguishable." She contends that the only difference is that this time the court modified the judgment and denied Amy's petition for rule to show cause. Amy argues that *res judicata* applies and therefore, the trial court striking paragraph J was in error. She further contends that the facts are almost the same in this case as those in *In re Marriage of Tronsrue*, 2024 IL App (3d) 220125, and *In re Marriage of Tronsrue*, 2025 IL 130596. We disagree with all of the contentions.

¶ 50 In *Winters*, the issue of whether the initial judgment was void was not addressed. *Winters*, 2017 IL App (5th) 160217-U. Instead, the court addressed Jimmy's failure to appeal the initial judgment and his subsequent agreement to pay more than was allowable under any statute, referencing the July 22, 2015, order. *Id.* ¶ 10. While the viability of the judgment due to preemption by federal law was within the purview of the appellate court given its ability to *sua sponte* consider issues of preemption, it did not, and we are not going to criticize our colleagues' prior decision that failed to address an issue that was not raised.

¶ 51 Nor do we find the facts in *Tronsrue*, 2025 IL 130596, "nearly identical." In *Tronsrue*, the parties entered into a marital settlement agreement (MSA). *Id.* ¶ 7. In that agreement, the parties agreed that a certain percentage of the husband's military pension was marital and the wife should receive an amount equal to 18.6% of both husband's army disability retirement pay and 18.6% of the VA disability pension. *Id.* The agreement also contained language stating that if the government agencies would not withhold the appropriate amounts and send them to the wife, the

husband would pay the amounts directly to the wife each month. *Id.* The MSA was incorporated into the judgment of dissolution entered on July 6, 1992. *Id.*

¶ 52     In September 1992, the wife filed a petition for indirect civil contempt contending that the husband's disability benefits had increased but she had not received an increase in her payments. *Id.* ¶ 8. In November 1992, the husband petitioned to terminate his veterans' disability payments contending the provision dividing the benefits was void under federal law. *Id.* ¶ 9. Ultimately, the Illinois Supreme Court disagreed and found that while a court could not order the husband to pay a certain amount of his benefits to his ex-wife, the fact that he agreed to pay that amount distinguished the case from the decision in *Howell*, which reached a contrary result when the court required the retiree to pay the benefits. *Id.* ¶¶ 43-48, 54. The *Tronsrue* court stated, "We reiterate that federal preemption is not applicable in a case where the circuit court did not order payment but, instead, the parties entered into an agreement that required [the husband] to pay [the wife] disability benefits that he received." *Id.* ¶ 55. Because it found federal preemption was inapplicable due to the MSA contractual obligations, it further found that *res judicata* applied. *Id.*

¶ 53     Here, as in *Howell*, and unlike *Tronsrue*, it was the circuit court that ordered Jimmy to pay Amy a portion of his military disability benefits in October 2014. As such, *Tronsrue* is distinguishable and does nothing to undermine the void provision in the parties' judgment of dissolution or the fact that *res judicata* is inapplicable. Amy's argument is centered upon a contention that an MSA, as seen in *Tronsrue*, should be construed as the agreed order issued in the case at bar on July 2015; however, no argument in support of that contention is provided.

¶ 54     Regardless, we disagree with her premise *in toto*. First, the trial court's October 3, 2014, docket entry ruling stated that the "VA waiver clause is ordered to be part of this order." Therefore, the trial court's October 28, 2014, written order specifically included the VA waiver clause that

23

required Jimmy to "pay back [Amy] any money she loses if [Jimmy] opts for VA benefits or does anything to reduce [Amy's] share of [Jimmy's] pension." There is no dispute that this provision required Jimmy to pay the same amount to Amy even if his retirement benefits decreased due to an increase in disability benefits. As shown above, the trial court was preempted from ordering Jimmy to pay Amy with his VA disability benefits under both federal statute and Howell. Because the trial court did not have subject matter jurisdiction to disburse any portion of Jimmy's VA disability benefits, the VA waiver provision was void *ab initio* and therefore was a nullity.

¶ 55 On January 12, 2015, the court noted that the parties reached an agreement as to all matters, Jimmy withdrew his motion for rehearing, and a written order was being prepared. The order was issued on January 29, 2015. That order did not address the retirement benefits issue despite them being raised in Jimmy's motion for rehearing. Instead, the order stated, "Except as otherwise modified by this Order, all other terms and provisions of the October 28, 2014, Judgment shall remain in full force and effect."

¶ 56 Amy argues that the parties "expressly agreed to the remaining terms from the original Judgment remining in effect." However, " '[a] contract that is void *ab initio* is treated as though it never existed; neither party can choose to ratify the contract by simply waiving its right to assert the defect.' " *1550 MP Road LLC v. Teamsters Local Union No. 700*, 2019 IL 123046, ¶ 28 (quoting *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 164 (2004)). As such, Amy and Jimmy could not ratify the void provision which in this case was paragraph J of the judgment because the circuit court was preempted from addressing it in the first place.

¶ 57 Even if the agreed order could be ratified, the anti-assignment provisions for VA disability benefits found at 38 U.S.C. § 5301 (West 2024) further undermine Amy's argument. That section

24

specifically states that, "in any case where a beneficiary entitled to compensation *** enters into an agreement with another person under which agreement such other person acquires for consideration the right to receive such benefit ***, such agreement shall be deemed to be an assignment and is prohibited." *Id.* § 5301(a)(3)(A). As such, even if the agreed order was applicable, the agreement to provide Amy VA disability benefits is precluded and preempted.

¶ 58    Here, we are not even dealing with a valid settlement. We are dealing with a ratification of a void provision in a judgment issued by the circuit court. As such, *Tronsrue* is easily distinguishable, and even if it was not, pursuant to the Supremacy Clause, we are required to follow the decisions in *Mansell* and *Howell*, which interpreted the same federal statutes and preempted circuit courts from disbursement of anything other than benefits that were properly classified as disposable pay whether the disbursement was procured by the trial court (*Howell*) or was in a settlement agreement (*Mansell*). While section 5301(a)(3)(B) (38 U.S.C. § 5301(a)(3)(B) (West 2024)) allows a veteran to use his disability benefits to repay loans, as long as the payments are "separately and voluntarily executed," contracting the benefit to another is prohibited under section 5301(a)(3)(A). *Id.* § 5301(a)(3)(A).

¶ 59    Amy also claims that we must follow *Tronsrue* based on their finding of *res judicata*. We again disagree. *Res judicata* has three requirements: "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) identity of cause of action, and (3) identity of parties or their privies." *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 9. Here we do not even get past the first requirement.

¶ 60    It is undisputed that the trial court issued the order requiring Jimmy to pay Amy a portion of his future VA disability benefits in paragraph J. Such state action conflicted with federal law because such action was preempted by federal law and rendered the state action null and void.

25

*Performance Marketing Association, Inc.*, 2013 IL 114496, ¶ 14. The circuit court was not a court of competent jurisdiction due to the preemption by federal law that removed the circuit court's subject matter jurisdiction as to the VA disability portion of Jimmy's benefits. Therefore, Amy's contention that *res judicata* applies as to the 2014 decision, has no merit. Her reliance on the 2015 "agreed order" is equally unwarranted because the parties could not ratify paragraph J because that portion of the judgment was void *ab initio* and is "treated as though it never existed." *1550 MP Road LLC*, 2019 IL 123046, ¶ 9. The parties could not ratify that which did not exist. *Id.* As such, *res judicata* is equally inapplicable to the 2015 order. Accordingly, the trial court did not misapply the law of federal preemption.

¶ 61                                     CONCLUSION

¶ 62    For the above-stated reasons, we affirm the trial court's denial of Amy's petition for rule to show cause and modification of the judgment to remove federally preempted provisions found therein.


¶ 63    Affirmed.